UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


HENRY LEE GLEEN,

          Petitioner,                             Hon. Wendell A. Miles

v.                                            Case No. 1:04-CV-291

DAVID GUNDY,

          Respondent.

_____/


## REPORT AND RECOMMENDATION

      This matter is before the Court on Gleen's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Gleen's petition be **denied**.


## BACKGROUND

      In August 1997, 12 year-old L.A., along with her mother and siblings, lived with her maternal grandmother and Petitioner, L.A.'s grandmother's husband. (Trial Transcript, March 30, 2000, 122-26, 223-25; Trial Transcript, March 31, 2000, 400-01).  On two separate occasions during August 1997, Petitioner forced L.A., who suffers from a learning disability, to have sex with him.  (Trial Transcript, March 30, 2000, 128-36, 138-42, 222; Trial Transcript, March 31, 2000, 392). Petitioner told L.A. not to tell anybody because "it's going to be our secret." (Trial Transcript, March 30, 2000, 134, 137-38, 141-42).  L.A. was scared to tell anybody what Petitioner had done to her. *Id.* at 142.  Around

this time, L.A.'s mother observed that L.A.'s attitude "changed" in that she became "very disrespectful." *Id.* at 225. When she discussed the matter with her daughter, L.A. decided to tell her mother that Petitioner had raped her because she was "sad" and "tired of holding it in." *Id.* at 142, 226. L.A. also told her school counselor that Petitioner raped her. (Trial Transcript, March 31, 2000, 396).

A medical examination revealed that L.A.'s hymen was not intact, a circumstance which the doctor characterized as uncommon for a 12 year-old girl and consistent with L.A. having engaged in sexual intercourse. (Trial Transcript, March 30, 2000, 85-96, 144-45). In an effort to assist the police, L.A. later wrote a statement detailing what Petitioner had done to her. *Id.* 146-47, 236-42.

L.A. and her family moved out of her grandmother's house, after which Petitioner would park outside her new home "just about every day." *Id.* at 247-48, 258. Petitioner's girlfriend, Feona Anderson, later forced L.A. to write a second statement asserting that her allegations against Petitioner were false. *Id.* at 128, 148-52. Anderson did not deny helping L.A. write this latter statement, but denied coercing L.A. to write such. (Trial Transcript, March 31, 2000, 292-302).

Petitioner was subsequently charged with one count of First Degree Criminal Sexual Conduct. Petitioner was convicted of this charge, following a jury trial. (Trial Transcript, April 4, 2000, 3-7). Petitioner then pleaded guilty to being a fourth habitual offender. *Id.* at 8-10. Petitioner was sentenced to serve 25-50 years in prison. (Sentencing Transcript, April 25, 2000, 8). Petitioner appealed his conviction to the Michigan Court of Appeals asserting the following claims:

> I.   The trial court engaged in a continuous pattern of derisive behavior towards defense counsel to the extent that Defendant was overwhelmingly prejudiced and Defendant's right to a fair trial as Guaranteed by the Due Process Clause of the United States Constitution was irrevocably impaired.

II.     The trial court's evidentiary rulings regarding missing res gestae witness Detective Roger Smith constituted an abuse of discretion which effectively deprived Defendant of due process of law in contravention of his constitutional rights to the effective assistance of counsel, the right to confront witnesses and the right to present a defense.

III.    Defendant's trial counsel made a number of mistakes so serious in nature that Defendant was deprived of effective assistance of counsel in derogation of the Due Process Clause of the United States Constitution.

IV.     Although not bound by the sentencing guidelines where Defendant is an habitual offender, the trial court clearly relied on the scoring of the guidelines and scored them erroneously, thereby imposing a disproportionately severe sentence against Defendant.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Gleen*, No. 227064, Opinion (Mich. Ct. App., Aug. 23, 2002). Asserting the same claims, Petitioner moved in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request for leave to appeal, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Gleen*, No. 122301, Order (Mich., May 7, 2003). On April 26, 2004, Petitioner submitted the present petition for writ of habeas corpus in which he asserts the four claims identified above.

## STANDARD OF REVIEW

Gleen's petition, filed April 26, 2004, is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411.  Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12.  Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority.  The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law.  *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct.  *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)).  Petitioner can rebut this presumption only by clear and convincing evidence.  *Id.*

The deferential standard articulated by the AEDPA, however, does not apply if the state has failed altogether to review a particular claim.  As the Sixth Circuit has indicated, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to

which [the] court can defer." In such circumstances, the court conducts a *de novo* review. *See McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003); *see also Wiggins v. Smith*, 123 S. Ct. 2527, 2542 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

I.        **Sentencing Claim**

Petitioner asserts that the trial court calculated his sentence based upon improperly scored sentencing guidelines. Petitioner further asserts that his sentence, based upon inaccurate information, was "disproportionately severe."

To the extent that Petitioner challenges the severity of his sentence, such fails to provide a basis for habeas relief. Michigan law provides that there must exist proportionality between an offense and the sentence therefor. *See People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990). The Sixth Circuit has observed, however, that because the United States Constitution "contains no strict proportionality guarantee," a claim that the sentencing court violated Michigan's principles of proportionality is not cognizable on federal habeas review. *Lunsford v. Hofbauer*, 1995 WL 236677 at *2 (6th Cir., April 21, 1995) (citing *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991)); *McLemore v. Berghuis*, 2006 WL 2818799 at *24 (W.D. Mich., Oct. 2, 2006).

Moreover, the Eighth Amendment to the United States Constitution "does not require strict proportionality between crime and sentence." *United States v. Layne*, 324 F.3d 464, 473 (6th Cir. 2003) (quoting *Harmelin*, 501 U.S. at 1001). Instead, the Eighth Amendment simply forbids extreme sentences that are "grossly disproportionate" to the crime committed. *Layne*, 324 F.3d at 473.

Considering the crime of which Petitioner was convicted, the sentence he received is in no way "grossly disproportionate" to the crime committed.

To the extent that Petitioner challenges the information on which his sentence was allegedly based, such likewise fails to warrant habeas relief. It has long been recognized that when imposing sentence, "courts have broad discretion to consider various kinds of information." *United States v. Watts*, 519 U.S. 148, 151 (1997); *see also*, *Roberts v. United States*, 445 U.S. 552, 556 (1980) (a "fundamental sentencing principle" is that "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come").

As the *Watts* Court further observed, "[h]ighly relevant - if not essential - to [the judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and circumstances." *Watts*, 519 U.S. at 151-52. Sentencing courts may even consider past criminal behavior which did not result in a conviction, or for which the defendant was never tried. *See Id.* at 152 (citations omitted); *Collins v. Buckhoe*, 493 F.2d 343, 345 (6th Cir. 1974) (citations omitted).

Sentences imposed on the basis of "misinformation of constitutional magnitude," however, may present grounds for habeas corpus relief. *Roberts*, 445 U.S. at 556 (citations omitted). To prevail on a claim that he was sentenced on the basis of such misinformation, Petitioner must establish that "the disputed information was materially false and that the trial court relied on the information." *United States v. Andrews*, 240 F.Supp.2d 636, 638 (E.D. Mich. 2003) (quoting *Buckhoe*, 493 F.2d at 345-46).

Petitioner asserts that his sentencing guideline score was improperly calculated and that the trial judge relied on such when determining his sentence.  First, Petitioner has not demonstrated that his sentencing guideline score was improperly calculated or based upon inaccurate information.  As the trial judge ruled at sentencing, the evidence of record supported the calculation of Petitioner's sentencing guideline score.  (Sentencing Transcript, April 25, 2000, 5-6).

Moreover, even if Petitioner could establish that his sentencing guideline score was improperly calculated or based upon inaccurate information, Petitioner has failed to establish that the trial judge relied on such when determining his sentence.  As Petitioner acknowledges, because he was sentenced as an habitual offender the trial judge was not required to rely on the sentencing guidelines when calculating his sentence.  A review of the sentencing transcript reveals no evidence that the trial court placed any reliance whatsoever on Petitioner's sentencing guideline score.  Accordingly, the Court finds that this claim raises no issue upon which habeas relief may be granted.

## II.        Evidentiary Claims

Detective Roger Smith was the detective to whom investigation of L.A.'s allegations was initially assigned.  (Trial Transcript, March 30, 2000, 236-37; Trial Transcript, March 31, 2000, 319-23). Detective Smith interviewed L.A. and her mother, after which the investigation stalled, apparently because the detective did not believe that L.A. was able to "get on the stand to testify."  (Trial Transcript, March 30, 2000, 238-44; Trial Transcript, March 31, 2000, 330-32).  Detective Smith was later demoted following an internal affairs investigation which concluded that he did not properly "follow through" with the investigation of this (and other) matters.  (Trial Transcript, March 31, 2000, 332-40).

Investigation of L.A.'s allegation was subsequently assigned to another detective, Gail Wojciechowski. (Trial Transcript, March 30, 2000, 247; Trial Transcript, March 31, 2000, 319-26).

The prosecution in this case identified Smith as one of the witnesses it planned to question at trial. (Trial Transcript, March 31, 2000, 327-30). However, because the subpoena compelling his attendance was not properly served, Smith did not appear to testify. *Id.* Petitioner later sought to question Smith in his case-in-chief, but could not do so because of his non-attendance. *Id.* at 397-98, 431. The trial judge found that the prosecution's failure to serve the subpoena on Smith was "not excusable" and later instructed the jury that it "may infer that [Smith's] testimony would have been unfavorable to the prosecution's case." *Id.* at 329-30, 476. Petitioner asserts that the trial judge's ruling denied him of the right to confront the witnesses against him as well as the right to present a defense.

A.      Confrontation Clause Claim

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right. . .to be confronted with the witnesses against him." While the Confrontation Clause guarantees to criminal defendants the opportunity to cross-examine witnesses who provide in-court testimony, it also guarantees to criminal defendants the right to cross-examine adverse witnesses whose out-of-court "testimonial" statements are introduced into evidence. *Crawford v. Washington*, 541 U.S. 36, 50-54 (2004).

Detective Smith did not testify in this matter. Furthermore, no out-of-court statements made by Smith were offered into evidence. The Court, therefore, fails to discern how Petitioner's Confrontation Clause rights were violated by the trial judge's ruling to instruct the jury that it "may infer that [Smith's] testimony would have been unfavorable to the prosecution's case." Petitioner asserts that

he wanted to question Smith in an attempt to discredit L.A.  However, as the Sixth Circuit has recognized, the "Supreme Court has not recognized the sweep of the Confrontation Clause. . .to encompass the right to impeach an adverse witness by putting on a third-party witness." *Farley v. Lafler*, 193 Fed.Appx. 543, 547 (6th Cir., Aug. 24, 2006).

The Michigan Court of Appeals determined that Petitioner was not deprived of the constitutional right to cross-examine the witnesses against him. *People v. Gleen*, No. 227064, Opinion at 5 (Mich. Ct. App., Aug. 23, 2002).  In light of the authority herein identified, the Court concludes that the decision of the Michigan Court of Appeals is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, its decision was not based on an unreasonable determination of the facts in light of the evidence presented.  As such, this claim presents no issue on which habeas corpus relief may be granted.

B.      Right to Present a Defense Claim

Petitioner asserts that the trial judge, by denying his request for a continuance to secure Detective Smith's appearance, violated his constitutional right to present a defense.  Petitioner's arguments fails for at least two reasons.

First, there is no evidence in the record that Petitioner ever requested a continuance in this matter.  The prosecution completed its case-in-chief on the morning of the second day of trial. (Trial Transcript, March 31, 2000, 384).  When asked to call the first witness in his case-in-chief, Petitioner indicated that he wished to call Smith who was not present. *Id.* at 384-85.  The trial judge responded by instructing Petitioner to "call a witness." *Id.* at 385.  Petitioner did not request a continuance or

otherwise address the circumstance regarding Detective Smith's unavailability, but instead called to the stand Linda Garvin, a counselor at a school L.A. attended.  *Id.*

Following Garvin's testimony, Petitioner was instructed to call his next witness.  *Id.* at 397.  Petitioner responded that his intended witness (whom he did not identify) was not available.  *Id.* at 397-98.  The trial judge again instructed Petitioner to call his next witness.  *Id.* at 398.  At this point, Petitioner indicated that he wished to call Detective Smith.  *Id.*  The trial judge responded, "[t]hat witness is not available you're entitled to an instruction on that. Now call a witness."  *Id.* at 398-99.  Again, Petitioner did not request a continuance to secure Smith's attendance, but instead called to the stand Petitioner's wife, Linda Gleen.  *Id.* at 399.

At the conclusion of Linda Gleen's testimony, the trial judge instructed Gleen that she "may step down."  *Id.* at 436.  Petitioner then immediately volunteered that "the defense rests." Petitioner did not request a continuance or otherwise address Smith's unavailability.  *Id.*  Thus, Petitioner's argument that the trial judge's ruling denying his request for a continuance to secure Smith's appearance deprived him of the right to present a defense must fail because Petitioner never requested any such continuance.  However, even had Petitioner requested (and been denied) a continuance the result is the same.

The Constitution guarantees to criminal defendants a "meaningful opportunity to present a complete defense."  *California v. Trombetta*, 467 U.S. 479, 485 (1984).  A criminal defendant's right to present a defense, however, may be reasonably restricted "to accommodate other legitimate interests in the criminal trial process."  *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  The failure by a trial court to grant a criminal defendant's request for a continuance to secure the testimony of a witness may,

depending on the circumstances, constitute a denial of due process.  *See Mackey v. Dutton*, 217 F.3d 399,

408 (6th Cir. 2000).  As the *Mackey* court stated:

> When a denial of a continuance forms a basis of a petition for writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process. . .We have considered the following factors in determining whether an accused was deprived of his right to due process by a denial of a motion for continuance: the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony.

*Id.* (internal citations omitted).

Here, there is neither evidence nor allegation that Petitioner ever interviewed (or even

attempted to interview) Smith regarding his potential trial testimony.  Aside from the vague assertion

that Smith's anticipated testimony would have undercut L.A.'s credibility, Petitioner has never identified

with any specificity what Smith would have offered had his attendance been secured.  Thus, there is no

evidence that Smith's testimony would have even been favorable to Petitioner's cause.  The *Mackey*

court found that in such a circumstance, the trial judge's decision denying a continuance did not deprive

the defendant of due process.  *Id.* at 408-10.  An additional factor weighing against Petitioner is that, as

the Michigan Court of Appeals correctly observed, to the extent that Smith would have been questioned

merely for the purpose of attempting to discredit L.A. such would have been cumulative to testimony

which Petitioner elicited on cross-examination of the prosecution's witnesses, as well as the direct

testimony of the witnesses questioned in his case-in-chief.  As the Sixth Circuit has recognized,

"unearthing bias by extrinsic evidence" is not "particularly significant or a fundamental element of the

accused's defense" especially where the accused "had sufficient opportunity to unearth bias on cross-examination." *Harrington v. Jackson*, 1 Fed. Appx. 367, 371-72 (6th Cir., Jan. 10, 2001).

The Michigan Court of Appeals determined that Petitioner was not deprived of the constitutional right to present a defense. *People v. Gleen*, No. 227064, Opinion at 5 (Mich. Ct. App., Aug. 23, 2002). In light of the authority herein identified, the Court concludes that the decision of the Michigan Court of Appeals is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, its decision was not based on an unreasonable determination of the facts in light of the evidence presented. As such, this claim presents no issue on which habeas corpus relief may be granted.

**III.        Ineffective Assistance of Counsel Claims**

Petitioner asserts several grounds to support his claim that his trial counsel rendered ineffective assistance. Petitioner faults his attorney for failing to secure the attendance at trial of Detective Smith. Petitioner asserts that his attorney failed to object to inadmissible testimony regarding an attempt to compel L.A. to recant her allegations. Petitioner claims that his attorney improperly failed to introduce into evidence L.A.'s preliminary examination testimony. Finally, Petitioner faults his attorney for failing to object to testimony which suggested that Petitioner had a prior criminal record.

To establish that he was denied the right to the effective assistance of counsel, Petitioner must first establish that his counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Accordingly, it must be demonstrated that counsel's actions were unreasonable under prevailing professional norms. *Id.* at 688. In making this determination, however, the Court must "indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

Second, Petitioner must further establish that his attorney's performance was prejudicial in that it denied him a fair trial. *See Id.* at 687; *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*), *cert. denied*, 113 S. Ct. 2969 (1993) (emphasis in original); *see also, West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996).

A.       Failing to Secure the Appearance of Detective Smith

As discussed above, while the prosecution identified Detective Smith as one of the witnesses it intended to question at trial, it failed to secure Smith's attendance at trial. Petitioner asserts that his attorney's failure to secure Smith's appearance for questioning deprived him of the right to the effective assistance of counsel.

Even if it was unreasonable for Petitioner's attorney to have relied upon the prosecution to secure Smith's attendance, Petitioner has not demonstrated that he suffered any prejudice as a result of his attorney's allegedly deficient performance. With respect to the testimony he anticipated to obtain from Smith, Petitioner vaguely asserts that Smith would have presented testimony calling into question L.A.'s credibility. Petitioner has not identified with any specificity the nature of this alleged testimony. As the Michigan Court of Appeals reasonably concluded, Petitioner was not prejudiced by his attorney's failure to secure Smith's attendance because Smith's testimony would merely have been cumulative to

-14-

other testimony elicited by Petitioner. *People v. Gleen*, No. 227064, Opinion at 6 (Mich. Ct. App., Aug. 23, 2002).

       B.     Testimony Regarding Feona Anderson's Actions

As previously noted, Petitioner's girlfriend, Feona Anderson, acknowledged that she helped L.A. write a statement in which she allegedly recanted her allegations against Petitioner. Obviously, one of the questions regarding this letter was whether L.A. authored it of her own volition or whether it was instead the product of compulsion. In this respect, L.A. testified that Anderson forced her to write the letter. Petitioner asserts that his attorney rendered ineffective assistance by failing to object to the admission of this testimony.

As Petitioner acknowledges, Michigan law provides that evidence regarding attempts to force a complaining witness to recant her allegations is admissible if such attempt "was made at the instigation of the defendant, or with his consent or approval, or at least knowledge or expectation that it had been or would be made." *People v. Salsbury*, 96 N.W.2d 936, 947 (Mich. 1903). Here, the victim testified that Petitioner and Anderson had a conversation immediately after which Anderson forced her to write the statement in question. (Trial Transcript, March 30, 2000, 150-51). As the Michigan Court of Appeals reasonably concluded, therefore, because "this evidence circumstantially connects defendant to Anderson's effort to get the victim to recant, the evidence was admissible." *People v. Gleen*, No. 227064, Opinion at 6 (Mich. Ct. App., Aug. 23, 2002). Because the evidence was properly admissible, Petitioner's attorney was not deficient for failing to object its admission.

C.      Failure to Introduce Preliminary Examination Testimony

On direct examination, L.A. testified that she wrote (with her mother's assistance) a statement describing what Petitioner did to her.  (Trial Transcript, March 30, 2000, 146-48).  During his cross-examination of L.A., Petitioner attempted to determine precisely who wrote this particular statement.  (Trial Transcript, March 30, 2000, 198-200).   After receiving what he believed was a contradictory response, Petitioner attempted to impeach L.A. by reference to her preliminary examination testimony.  Petitioner identified for L.A. the relevant portion of her preliminary examination testimony and asked her to read it to herself.  L.A. did as instructed, but indicated that she "don't remember saying this."  The trial judge then instructed Petitioner that he was "bound by that answer" and to "move on" to a different line of questioning.  *Id.*

Petitioner later moved for the admission of a discreet portion of L.A.'s preliminary examination testimony.  *Id.* at 207-08.  Petitioner asserted that L.A.'s inability to remember her preliminary examination testimony prevented him from illustrating the alleged inconsistencies in her testimony.  Petitioner asserted, therefore, that under the Michigan Rules of Evidence he was entitled to introduce into evidence the relevant portions of her preliminary examination testimony.  *Id.*  The trial judge observed that L.A.'s preliminary hearing testimony was admissible only to the extent that such was inconsistent with her trial testimony.  *Id.* at 281-82.  The judge then indicated that he would rule on the matter the following morning.  *Id.* at 282-84.  At the outset of the next day's proceedings, the trial judge stated that:

> The record should note that we have met this morning in my chambers and gone over the preliminary examination transcript.  And I think we have an agreement as to what sections will be read into the record.  It's been agreed that it's just too cumbersome to edit the preliminary exam transcript. so counsel is going to read it in.  I told him that it would be at his pleasure, whenever he wanted to do it.  If he wanted to do it right after

-16-

> this witness, he may do so.  He may do it in his case in chief.  Whatever
> his pleasure may be.

(Trial Transcript, March 31, 2000, 288).

Petitioner acknowledged that the trial judge accurately stated the nature of the agreement reached in chambers.  *Id.* at 288-89.  Petitioner's attorney, however, never read the admitted portions of L.A.'s preliminary examination testimony into the record.  At the close of proofs, but before closing arguments, counsel stated that he "forgot to read that testimony we talked about this morning."  *Id.* at 439-40.  Counsel, however, did not request the opportunity to read the testimony into the record before closing arguments.  Petitioner asserts that his attorney's failure to introduce into evidence L.A.'s allegedly contradictory preliminary examination testimony deprived him of the right to the effective assistance of counsel.

While the Court agrees that counsel's failure in this regard constitutes deficient performance, Petitioner has not demonstrated that he was prejudiced thereby.  The record does not indicate which portions of L.A.'s preliminary examination testimony the trial judge permitted Petitioner to read into the record.  However, when Petitioner initially moved for the admission of this testimony he requested to admit "pages 40 through the top of page 66" of the transcript of L.A.'s preliminary examination testimony.  (Trial Transcript, March 30, 2000, 208).  While the trial judge's comments quoted above certainly suggest that only a portion of this testimony was admissible, a review of the entire testimony which Petitioner sought to introduce fails to reveal any inconsistency which it can reasonably be asserted would have resulted in a different outcome.  Thus, this claim cannot form the basis for habeas relief.

D.      Testimony Suggesting that Petitioner had a Criminal Record

During Petitioner's cross-examination of Detective Wojciechowski, the following exchange occurred:

| | |
|---|---|
| Counsel: | Who is Herk? |
| Detective: | Your defend - the defendant. |
| Counsel: | Why do you call him Herk? |
| Detective: | That's his nickname that most everybody calls him. |
| Counsel: | Has that been indicated in any police reports that you prepared, that he's also known as Herk? |
| Detective: | I don't believe so. |
| Counsel: | Who told you that he was Herk? |
| Detective: | He did.  I have known him for a long time, so I knew his nickname. |

(Trial Transcript, March 31, 2000, 361).

Petitioner asserts that this testimony established that he had "prior contact with the criminal justice system."  He further asserts that his attorney's failure to either object to this testimony or seek a mistrial as a result thereof constituted ineffective assistance.

As the Michigan Court of Appeals correctly recognized, the testimony at issue was "fleeting" and had counsel objected thereto "he would have merely called attention to the detective's comment." *People v. Gleen*, No. 227064, Opinion at 6 (Mich. Ct. App., Aug. 23, 2002).  Petitioner has also identified no authority supporting the proposition that he was entitled to a mistrial as a result of this testimony.  Thus, as the Michigan Court of Appeals reasonably concluded, counsel's failure to either object or request a mistrial did not constitute deficient performance.  *Id.*

-18-

Moreover, even if counsel's actions in eliciting (or failing to object to) this testimony was deficient, Petitioner has not demonstrated that he suffered prejudiced as a result. The Court does not agree with Petitioner that this testimony established that he had previous contact with the criminal justice system. As the detective testified, she did not learn of Petitioner's nickname from a police report, but instead knew Petitioner's nickname because she had "known him for a long time." She further indicated that "most everybody," a group which certainly includes non-police officers, knew that Petitioner's nickname was Herk. Thus, while Petitioner's interpretation of the detective's testimony may not be unreasonable, another equally plausible interpretation of her comments is simply that Petitioner - and his nickname - were widely known in the community.

The Michigan Court of Appeals determined that Petitioner was not deprived of the right to the effective assistance of counsel. *People v. Gleen*, No. 227064, Opinion at 6 (Mich. Ct. App., Aug. 23, 2002). In light of the authority herein identified, the Court concludes that the decision of the Michigan Court of Appeals is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, its decision was not based on an unreasonable determination of the facts in light of the evidence presented. As such, this claim presents no issue on which habeas corpus relief may be granted.

**IV.       Trial Judge's Comments**

Petitioner asserts that the trial judge made various comments throughout his trial which deprived him of a fair trial. However, with one exception, which as discussed below is without merit, Petitioner has procedurally defaulted these claims, precluding their consideration by this Court.

Under the procedural default doctrine, federal habeas review is barred where a state court declined to address Petitioner's claims because of a failure to satisfy state procedural requirements. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Where Petitioner's claims have been procedurally defaulted, the state court judgment rests on an independent and adequate state ground precluding review by a federal court. *See Coleman*, 501 U.S. at 750-51; *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977); *Harris v. Reed*, 489 U.S. 255, 262 (1989).

The Sixth Circuit employs a multi-part test to determine if a petitioner has procedurally defaulted a particular issue: (1) there must exist a state procedural rule that is applicable to the claim and with which the petitioner failed to comply, (2) the state court must have actually enforced the state procedural rule, and (3) the default must constitute an "independent and adequate" state ground on which the state can rely to foreclose review of a federal constitutional claim. *See Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In this respect, the Court notes that the Sixth Circuit has held that the failure to contemporaneously object "is a generally recognized, firmly established independent and adequate state law ground for refusing to review trial errors." *Burton v. Bock*, 187 Fed. Appx. 465, 470 (6th Cir., June 27, 2006) (citing *Coleman*, 501 U.S. at 747).

To find that a petitioner has procedurally defaulted a particular claim, "the last state court rendering a judgment in the case must have based its judgment on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). However, review by a state court of a procedurally defaulted claim to prevent manifest injustice does not constitute a review on the merits sufficient to excuse procedural default. *See Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) ("a state court's plain error analysis does not save a petitioner from procedural default").

If Petitioner has procedurally defaulted a particular claim, federal habeas review is available only if he can establish the existence of cause and prejudice for his procedural default, or if a fundamental miscarriage of justice would result from the failure to grant the relief he seeks.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991); *Coleman*, 501 U.S. at 750-51; *Buell*, 274 F.3d at 348.

With respect to cause, Petitioner must demonstrate the existence of some objective factor, external to the defense, which impeded his efforts to comply with the applicable procedural rule.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To establish that a miscarriage of justice would result from the Court's failure to review his procedurally defaulted claims, Petitioner must make a "colorable showing of factual innocence."  *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).  The burden to make this showing rests with Petitioner, *see Floyd v. Alexander*, 148 F.3d 615, 618 (6th Cir. 1998); *Mitchell v. Rees*, 114 F.3d 571, 577 (6th Cir. 1997), who must demonstrate the existence of new and reliable evidence, not presented at trial, which establishes that some constitutional error probably resulted in the conviction of an innocent person.  *See Schlup v. Delo*, 513 U.S. 298, 324 (1995).  The evidence must show that it is "more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Id.* at 326.  This requires Petitioner to overcome a hurdle higher than that to establish prejudice.  *Id.*

As the Michigan Court of Appeals, the last court to render a judgment in this matter, correctly recognized Petitioner (with one exception) failed to contemporaneously object to the comments presently at issue.  *People v. Gleen*, No. 227064, Opinion at 3 (Mich. Ct. App., Aug. 23, 2002).  Accordingly, the court found that such claims had been procedurally defaulted thereby preventing Petitioner from challenging such on appeal.  The one claim which the court of appeals found had not been procedurally defaulted regarded the trial judge's comments to the jury regarding the absence of

Petitioner's counsel which prevented the trial judge from responding to a question posed by the jury. As discussed below, however, Petitioner's claim regarding such comments is without merit.

    With this one exception, therefore, Petitioner has procedurally defaulted his claims that the trial judge's comments deprived him of the right to a fair trial.  Petitioner has not alleged that there exists either cause or prejudice for his default or that a fundamental miscarriage of justice would result from the failure to grant the relief he seeks.  The Court notes that ineffective assistance of counsel *may* constitute cause to overcome procedural default, but only where such claim of ineffective assistance has itself been properly exhausted.  *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).  While Petitioner asserted in the state courts several claims of alleged ineffective assistance of counsel, he never argued that his counsel rendered ineffective assistance for failing to contemporaneously object to the comments at issue.  The Court, therefore, with the one exception previously noted, is prevented from reviewing the merits of Petitioner's claims that the trial judge's comments deprived him of the right to a fair trial.

    The one aspect of this claim which has not been procedurally defaulted is Petitioner's assertion that he was deprived of the right to a fair trial by the trial judge's comments to the jury regarding the absence of Petitioner's attorney which prevented the court from responding to a question from the jury.

    The jury in this matter began deliberating on March 31, 2000.  (Trial Transcript, March 31, 2000, 480-81).  On April 3, 2000, the jury communicated a question to the court, after which the following exchange occurred, which Petitioner asserts deprived him of the right to a fair trial:

> Court:  Record should note the jury is present.  Members of the jury, I have a question from you which says, we request [L.A.'s] testimony from the trial.  I would be pleased to read you the testimony, but we can't find one of the

lawyers and I have been looking for him for about 45 minutes. There's no sense in making you wait. So you can go home and come back tomorrow morning at 10:00. You be here tomorrow morning at 10:00 sharp and we'll read back all the testimony you want. I apologize. Take them out.

Clerk: Yes, your Honor.

Court: I apologize. I don't know what else to say to you, but I'll settle it, don't worry about it. I'll take care of it. Take the jury out. They're discharged for the day, they will return tomorrow. You should take note that the defendant is here, members of the jury, and he's been here. And don't hold it against him because he had nothing to do with it. All right.

(Trial Transcript, April 3, 2000, 488-89).

The Fourteenth Amendment to the United States Constitution guarantees to every criminal defendant the right to a "fair trial in a fair tribunal before a judge with no actual bias against the defendant." *Lyell v. Renico*, 470 F.3d 1177, 1186 (6th Cir. 2006) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997)). With respect to the type and nature of comments which serve to deprive a criminal defendant of the right to a fair trial, the Sixth Circuit has held as follows:

A judge's misconduct at trial may be characterized as bias or prejudice only if it is so extreme as to display [a] clear inability to render fair judgment, so extreme in other words that it display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible. [J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases ordinarily do not support a bias or partiality challenge. . .[But] they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. Expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women. . .sometimes display, by contrast, do not establish such bias or partiality.

*Lyell*, 470 F.3d at 1186-87 (quoting *Liteky v. United States*, 510 U.S. 540, 551-56 (1994)).

The Court agrees with the observation by the Michigan Court of Appeals that the "better practice in this situation is to excuse the jury without any comment as to why the action was necessary." *People v. Gleen*, No. 227064, Opinion at 5 (Mich. Ct. App., Aug. 23, 2002).  However, the Court also finds reasonable the court of appeals' conclusion that the comments at issue "did not contribute to the verdict in any way" and "did not influence the jury such that defendant was deprived of a fair trial."  *Id.* Accordingly, this claim presents no issue on which habeas corpus relief may be granted.

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States.  Accordingly, the undersigned recommends that Gleen's petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  July 25, 2007                          /s/ Ellen S. Carmody
                                            ELLEN S. CARMODY
                                            United States Magistrate Judge